And we'll call our next case, 24-9562, Lopez-Martinez v. Bondi. Counsel, please proceed. Good morning, Your Honors, and may it please the Court. My name is Luis Cortez. I'm here from Novo Legal on behalf of the petitioner. I'll endeavor to reserve three minutes for rebuttal. Watch my time. Your Honors, there's two main points that I would like to focus on here today. First is the waiver issue that was brought up and whether the unable or unwilling issue was waived and how that fits into this. And then I would like to then jump into what we argue was the misapplication of the particular social group analysis to the Board and why that is an important thing to resolve today, too. Going to the waiver issue first, Your Honor, the government contends that that is a dispositive issue here, that whether the government is unable or unwilling to protect the petitioners and that because they contend that that issue was waived and that the Court should dispose of that case here. But the legal sequence here matters, and the particular social group has to be evaluated first and whether the individual fits into that particular social group so that that would advise and guide the context of whether the government in question is willing or unable to. Well, let me ask you about that because the BIA and the IJ ruled on both of those, right? There was a ruling that your client was not part of the social group, and there was also a ruling that there was no showing that the police were unable or unwilling to protect her. Yes, but there's a lot missing there because when the immigration judge made the evaluation about whether the government is unable or unwilling to protect the petitioner, the immigration judge did it with a very specific context. She disposed of the particular social groups and really just broke it down to whether enduring women found that to be a recognizable social group. And then only from there did she evaluate the country conditions and whether enduring women are able to be—the government is able or willing to protect her. But that analysis did not happen with respect to the other social groups. And we can see that from the immigration judge's decision that the Board of Immigration Appeals adopted, which says she talks about enduring women generally in her decision and makes other analysis and other parallels about other women or other females, and it's within that context. The immigration judge does not evaluate whether somebody in this specific context that was proposed to her, whether the government is unable or unwilling to protect somebody like that. And this is why it's important because whether the government is unable or unwilling to protect an individual, it matters whether they're part of a group that the government is unable or willing to protect. The protected ground is important because there might be an evaluation that the government is unable or willing to protect people on this kind of spectrum, but it doesn't go to the heart as to whether they're going to be able to protect individuals in the particular social group that was proposed. Now, isn't that, though—I mean, that's—I'm gathering that you think that was an error by the IJ. And, I mean, isn't that something that you should appeal that should be part of your opening brief? There was also this finding that the government was able and willing to protect my client, or there was a finding that we hadn't shown the opposite, and that was error as well, because it's all part of the analysis. At some point, you have to make that showing, don't you? No, Your Honor, and I think— You never have to show that? Well, I get—Neon, I think—the Neon v. Gonzalez case, I think, really is instructive here, and let me explain why. In that case, the board found that someone did not fit into the particular social group. It was a FGM case, and so what the Tenth Circuit said there is that it reversed the finding that the individual was part of a particular social group, and then it remanded back down to the agency to figure out whether the government was unable or unwilling to protect, and I think that's what we're advocating for here is for this court to follow the Neon case and say, okay, there's a particular social group here. That is the central question, whether or not the government is willing or unable to protect somebody in that group. Well, let me stop you for a minute, because in that case, I didn't read that as being one where the court said, okay, we're going to rule—they ruled on a credibility issue, basically, and remanded it, as I read it, and they didn't say, we're not going to reach the unable and unwilling question because it would be improper to do it at this stage. They just sent it back as a matter—it was how they did it, but they didn't explain the same way you are. Is that fair? I respectfully disagree, Your Honor. I read the case differently. I read the case in that once they reached the particular social group aspect of the case, whether she belonged to a particular tribe, they remanded to figure out whether they were unable or unwilling to protect. The government was unable or unwilling to protect her within that context, because there was no findings of fact that were made within that context. But there was an allegation of her particular social group, and so you don't know what's the chicken and what's the egg. She had to prove several things. One, that she is a protected social group. Second, the government was unwilling or unable to protect her, and it was her claim to prove both things. She had two things she had to prove. So I'm not following your statement that until there was a correct ruling on protected social group, she had no obligation to prove unwilling and unable to protect. She had to prove both things right from the get-go, because they're both elements, aren't they? I just don't understand your argument. I see. I'm sorry, Your Honor. I think I misunderstood. Yes, an advocate absolutely has to show both things when they're going to—before an immigration judge. But when an immigration judge is making their decision, and they're deciding whether or not the government is unable or unwilling to protect the individual, it has to be done within the context of the particular social group. So that has to be resolved first, whether the particular social group is cognizable and the individual is part of that social group. And so with the immigration judge, the applicant absolutely has to provide that fact and that argument. What particular social group was the immigration judge assuming when he concluded that the government could protect that group? In this case, Your Honor? Yes. The immigration judge concluded that enduring women was the cognizable particular social group. But the social groups that were proposed were more nuanced. It was enduring women who are viewed as property and enduring women who are unable to leave a relationship. And those are particular social groups that were previously discussed by the board. There's been a lot of litigation back and forth on that. But those were the ones. And I think it's important— I don't understand how that differs from the plaintiff's claim here. It sounds to me like you're saying the immigration judge postulated the proper particular social groups and made a ruling that the government was able to protect them. She articulated a much different social group, Your Honor. And I think we can see the example here. Why? Because when she was trying to figure out—when the immigration judge was evaluating her decision based on that social group, she drew other comparisons saying, oh, well, the abuser in this case, the persecutor in this case, didn't abuse some of the children who were women. And it made other comparisons about other women. But there are other elements here that tie the persecution here. So just enduring women wasn't enough. But you're not alleging a particular social group that included consideration of the child, as I understood it. You were alleging a particular social group that only related to her. So why should the—I mean, your particular social group was women who can't get out of a relationship. That's right. It didn't have anything to do with children. Right. The immigration judge made those comparisons. When she was evaluating enduring women, and that's the social group that she ended up evaluating and made the rest of her analysis in, when she was concluding that the government either was willing or able to protect the petitioner or that she wouldn't face prospective harm, she drew analogs from other women within the context of the story. And that—one of the things that I think highlights the importance of the particular social group that should have been evaluated was that it excludes other members of her family that weren't— I'm sorry, I'm dense. What particular social group did the immigration judge use in concluding that the government could protect them? Enduring women. Other Hungarian women. Enduring women was the particular social group that she evaluated. Right. So that's a broader group. If the government would protect all Hungarian—I mean, Honduran women, wouldn't that include a subgroup of Honduran women that have children, for example? Not necessarily. Because whether there's an evaluation of whether Honduran women can be protected, it's very context-specific. Protected of what? From who? Of what kind of things? And so if we're looking at these very broad strokes of Honduran women, then it ignores the particular nuances that the record established of women where they're in a relationship that they're unable to leave. And there are country condition reports that talk about the specific dynamic that a woman has when they're unable to leave a relationship with a man in Honduras, including, for example, that 80% of—there's a statistic that 80% of people in Honduras believe that a woman needs to be obedient to the man. So I am still confused. I'm sorry to take too much time. I don't want to. But I thought it was important here that she was not married to this man and that there may be more—there may be a different Honduran response to the desire to leave your husband than to leave just a live-in boyfriend. But you're not articulating that, and I'm just—just try one more time in one sentence what you think—why you think the determination of unable to protect did not apply to this particular plaintiff. Just one sentence, and then I want to drop the subject for now. Sure. My one sentence answer would be that the cultural norms of when someone is in a relationship that are unable to leave is different than any other—than a different type of danger than any other woman would face. Okay. Counsel, can I ask— That's all I'm going to do for now. You proceed with your argument. My understanding is Ms. Lopez-Martinez may not have even notified the police or any authorities regarding the persecution she claims. So why doesn't that defeat the claim she's making now? Yes, Your Honor, and I'll try to wrap up quickly because I'm running into my rebuttal time. For two reasons. One is that the respondent could show, and we would argue that she did show, that it would be an exercise in futility if she were to have reported it. One, because there was a neighbor in a very similar position where the police was unable to help, and that was a firsthand account of what she witnessed. Two, the country condition reports indicates that specifically women facing danger from men in a relationship that they're in are unable to receive help because of the social and cultural norms that are there. And that's different than maybe a woman outside and being robbed from somebody that they don't know. This is very particular. And I think although she was not married, the component of her being unable to leave was tied to other parts of it, including having a child in common with this person. And so the legal articulation as to whether someone is unable to leave is not just whether they're able to physically distance themselves or whether even the individual said, I think I'm done with this person, it's whether they're actually able to leave given all of the components in mind. And the immigration justice didn't get there. So I'm concerned that this may be, we may be talking about something that's unexhausted. Did you bring up before the BIA this idea that there was no need to ever address the unable and unwilling component of this because the IJ had just been talking about women in general and not the two social groups that you brought up? In the motion to reconsider, Your Honor, yes. We said that the particular social groups need to be reconsidered and re-evaluated. And I believe the motion to- That's a different question. Did you say that that also rendered invalid the IJ's conclusion that the authorities were unable or unwilling to help your client? Not invalid, but incomplete. It's an incomplete analysis. Okay. So I'm going to see that if I look at the record in what you raised before the BIA. What was raised before the BIA? Yes, and I can provide a record citation to you on rebuttal.  Thank you. And I'll reserve 20 seconds for rebuttal. We're going to give you just a little bit more time. Okay. Thank you. To be determined. Good morning, Your Honors, and may it please the Court. Cori Farrell on behalf of the Attorney General. The petition for review in this case challenges the Board's denial of petitioner's motion, which requested reconsideration of its prior decision upholding an IJ's position.    However, in their opening brief, petitioners do not challenge the Board's conclusion that there was no error of fact or law in its underlying decision relating to the unable or unwilling determination. You don't have to, because as a matter of law, at least as I'm hearing them, you can't ever make that decision until you have a proper determination on the membership and the social groups. Your Honor, that plays in the face of decisions of this Court and the Board, which have decided asylum and withholding cases solely on the unable or unwilling element. Respondents filed a 28-J. In cases where the protected social group has not yet been clarified? In different contexts. Respondents cited the Singh case in a 28-J letter, and that was a political opinion case. The matter of MSI was the recent Board decision. But there has been no case law from this Court or the Board requiring this sequential analysis. If I said to the immigration judge, they're not going to protect my group, and I'm the judge. And I say, well, before I can tell whether they would protect your group or not, what is your group? And then I get a response, well, it could either be this, this, this, or this. And I say, I've got to know what your claimed group is before I can even begin to evaluate whether we'll be protected or not. Maybe some of those groups would be, and some wouldn't be. Why is that a wrong approach? Why is that a wrong approach? Because as this Court has recognized, that there are three different elements that an asylum applicant must satisfy. And one of those elements is unable or unwilling. But here, I think it's also important to point out— So you're saying it's just up to the applicant. The applicant chooses a social group. If it's ambiguous, that's their problem. But whatever they choose, then they have to prove unable to protect. And the Court has to accept whatever applicant group is presented to that judge. Is that what you're saying? The judge does not have to accept that group. As we saw in this case, the immigration judge went through three separate proposed particular social groups and determined why either they were not cognizable, petitioner was not a member, or that there was no nexus between any harm and the group of Honduran women. And then the immigration judge went to the additional element, unable or unwilling, and found that there was no evidence that the government was unable or unwilling to protect petitioner. And I would just like to point out as well that petitioner doesn't argue how the evidence that the immigration judge considered in this case would have been any different had there been a different determination on the particular social groups. And here, we're also talking about the denial of a motion to reconsider. So we are removed from the immigration judge's underlying decision. And the board considered relevant country conditions evidence relating to violence against women. Petitioners have not pointed to any evidence that said the board should have looked at this instead of this because of the particular social group issue. So I suggested earlier that maybe we're dealing with something that had not been raised before the BIA? That's correct, Your Honor. I believe in the 28J, respondent noted that this was an argument raised for the first time in the reply brief. This sequential analysis or this argument that the immigration judge's unable or unwilling analysis seemed to only apply to one particular social group. Let me ask you another question. I think in the briefing there's a suggestion that the authorities are, in fact, unwilling or unable to protect the respondent. Is there evidence in the record that would show that the BIA's finding or the IJ's finding that that has not been established? Is there evidence in the record that would support that they are willing and able to protect her? The agency cited specific evidence in the record which it noted was more recent evidence showing services and laws to protect women. I believe the board cited it at AR 6 and they cited AR 353 to 364. So, I'm sorry. No, that's all right. Go ahead. And they also considered the fact that petitioner didn't respond. And in this court's recent seeing decision, the court discussed why failure to report was important in this analysis. And so, the board properly considered these two different pieces of evidence. Petitioner's particular situation where she did not report, so we don't know how authorities would respond to her. And then the country conditions evidence showing that while there are problems with domestic violence in Honduras, the government is taking steps to address those problems and to provide services to protect women in these situations. Counsel, may I ask, going back to the waiver question for a minute, it seems that once the government invoked waiver in your response brief in the reply, Ms. Lopez-Martinez puts a lot of weight on this Niang v. Gonzalez case. And as you heard, I think Judge Carson asked the question, that may have been what our court did when we remanded back, but I don't read that case to explicitly hold a certain order of operations or sequence, nor do I recall the context of that case being appellate waiver. But having read the reply now about Niang, what is your view on how we interpret that case? Your Honor, my view is the same, is that the court had not addressed the unable or unwilling issue, and so it remanded to the board to consider it in the first instance as is appropriate. I have found no case law from this court or the board requiring a step-by-step one, two, three analysis. In fact, the opposite is true. Both this court in Niang and in Singh lay out three elements, and the INA, the definition of refugee in the INA includes unable or unwilling. And so if you cannot satisfy that element, then the claim fails. So the failure to challenge that dispositive issue is fatal to this petition. So, I presume that the country conditions report doesn't have specific discussion in it about married women in Guatemala who are unable to leave their relationships or, oh, that was the, they were in Honduras, so Honduran women in a relationship they are unable to believe, or Honduran women viewed as property by virtue of their status in a relationship. The country conditions report that they submitted doesn't reflect specific analysis of those social groups. That's correct, Your Honor. I believe the closest is what my friend pointed to about the obeying, the view of people thinking that women need to obey their husbands, but nothing specific to these particular groups. And that's why it's important when evaluating these claims to look both at petitioner's particular situation and then just these overall country conditions. How would a plaintiff prove that? I mean, if there's not a, usually everybody relies on the country conditions report. That's the official report. That doesn't narrow it down to this specific claimed protected group. How does the plaintiff prove it? That's why this is a case-by-case adjudication before the immigration judge based on not only the country conditions evidence, but the testimony of the petitioner or anyone else the petitioner calls to testify. So the way they prove it is there's no country report, Your Honor, but I asked the police three times and they never showed up. Another friend of mine in the same situation asked the police. They didn't show up. That'd be kind of the way you'd prove it? That could be one way, yes, Your Honor. And as this court stated, you look at both the petitioner's situation and the country conditions evidence. But again, that's why it is important to address this issue in briefing to present all these issues. Well, I guess what I'm getting at, at least, in that discussion about the country conditions report is they tend to have general information in them. They're not specifically addressed to these very narrow social groups. It doesn't mean they're irrelevant. They can be considered. They do have maybe relevant information about how the petitioner in this case would have been treated. We can consider them, but we don't have, it's the same evidence that we would have received if it was the way Hunter and women were treated. That's correct, Your Honor. The evidence that the agency considered is this broad evidence. And it's not like an argument that the agency considered completely irrelevant evidence to these claims. The agency considered the evidence pertaining to how women in Honduras are treated. Okay. Counsel, may I ask you about your 28-J last week? Yes. The petitioner here relies or makes an argument that there was an error in the application of that certain case, the matter of ARCG. As you point out to us in a helpful manner, that decision has since been overruled by the Attorney General. The one point of your letter that wasn't clear to me is once that is overruled, is it at the time that the petition was before the immigration judge that the judge may have to apply that law or have retroactive application now that it's been overruled? I would say that it hasn't been determined on the retroactivity. In this case, likely it would not be retroactive, but it doesn't really matter because the board distinguished matter of ARCG instead of applying matter of ARCG, so the result would be the same either way. If there are no further questions, Your Honors. Okay. Thank you, Counsel. Thank you so much. Can we add a minute? Can we add a minute to his rebuttal time? Thank you, Your Honor. I appreciate the generous minute. Thank you. You bet. I'll be quick. Your Honor, the issue of what comes first is more about the waiver and how these issues were presented before this court more than so that they were, how they were presented before the agency because on page 37 of the record, the motion to reconsider does ask the agency to relook at whether the government is unable or willing to protect her given the particular social group and urges the board to look at the particular social group and that the error of the IJ was that it was applied more broadly and not in this particular context. So when presenting it to this court, we urge the court to find that it was misapplied in this case, that the board misapplied ARCG and MEVG and then remanded for the rest of it and that the issue of waiver of the unable or unwilling has something that has to be dealt with by the agency and then they can figure that out instead of this court figuring out so the issue is not waived and I think that that has to happen first and lastly, my last 30 seconds, Your Honor, on page 17 and 18 of our brief, excuse me, 18 and 19 of our brief, we cite to all of the different country condition evidence that is specific to enduring women who are viewed as, who are unable to leave or are viewed as property and that they are a particular social group. Hold on, those specific terms are used in the country conditions report? No, Your Honor. I'm just saying, if you were proceeding on, tell me if I'm wrong, if you were proceeding on the idea that she was a Honduran woman unable to leave, your country condition report and the evidence would be the same? Yes.  And we are challenging the application of MAVG and ARCG. Yeah, fair enough. Okay, thank you. Thank you, Your Honors, I appreciate the answer. Okay, we're going to recess for 10 minutes and we'll be back. Counsel are excused and the case is submitted. Thank you to both counsel for your nice arguments.